UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHNNY DELUIS-MORELOS,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>ICE FIELD OFFICE DIRECTOR,<br><br>　　　　　　Respondent. | CASE NO. 12CV-1905JLR<br><br>ORDER |

## I.　INTRODUCTION

Before this court is Respondent Immigration and Customs Enforcement ("ICE") Field Office Director's objection, (Obj. (Dkt. # 25)), to Magistrate Judge James P. Donohue's Report and Recommendation (R&R (Dkt. # 23)) pertaining to a habeas corpus petition filed by Petitioner Johnny Deluis-Morelos. (Pet. (Dkt. # 10.)) Having carefully reviewed all of the foregoing, along with all other relevant documents, and governing law, the court ADOPTS the Report and Recommendation (Dkt. # 23), GRANTS Mr.

Morelos's petition for writ of habeas corpus, and orders ICE to provide Mr. Morelos a bond hearing.

## II.   BACKGROUND

Mr. Morelos is a native and citizen of Columbia, South America who entered the United States in 1998 without inspection.

Since Mr. Morelos arrived in the United States he has developed a lengthy criminal record. This record includes several crimes appearing to qualify him for expedited removal under 8 U.S.C. §§ 1227, 1228, including drug crimes and an aggravated assault. (*See* Mot. to Dismiss (Dkt. # 20) at 2.) ICE has identified two drug convictions—conspiracy to deliver cocaine in 2009 and delivering cocaine in 2010—as the basis of these ongoing removal proceedings. (*See* Mot. to Dismiss at 4-5.)

Mr. Morelos came to ICE's attention on May 15, 2012, when Yakima County Jail contacted ICE officers to notify them that Mr. Morelos had been detained for a probation violation.[1] After interviewing Mr. Morelos at the jail, ICE determined that he met the requirements for administrative removal. This determination was predicated on the above mentioned convictions. *See* 8 U.S.C. §§ 101(a)(43)(B), 1227, 1228. ICE served Mr. Morelos with a final administrative removal order on June 27, 2012. ICE also placed an immigration detainer with the Yakima County Jail, requiring that Mr. Morelos be transferred to ICE custody after his release from jail. On June 28, 2012, Mr. Morelos was transferred to ICE custody and detained at the Northwest Detention Center. According to

---

[1] A probation violation does not qualify an alien for removal under 8 U.S.C. § 1227.

its pleadings, ICE detained Mr. Morelos under 8 U.S.C. § 1226(c).  Mr. Morelos is awaiting additional administrative proceedings that are scheduled to take place in May.[2]

Mr. Morelos filed the instant petition for writ of habeas corpus on November 9, 2012.  He seeks release from custody or, in the alternative, an individualized bond hearing before an Immigration Judge.  (*See* Pet. at 2.)  ICE filed a motion to dismiss Mr. Morelos's petition.  ICE's motion to dismiss and Mr. Morelos's petition for habeas corpus were before Magistrate Judge James P. Donohue, and on February 25, 2013, Magistrate Judge Donohue issued his Report and Recommendation.  (*See generally* R&R.)  In it, he recommends that this court grant Mr. Morelos's habeas corpus petition, deny ICE's motion to dismiss, and require that ICE provide Mr. Morelos with an individualized bond hearing before an Immigration Judge.  (*Id.*)

ICE filed a timely objection to Magistrate Judge Donohue's Report and Recommendation.  (*See* Obj.)  Those objections are before the court.  (*See generally* id.)

### III.  STANDARD OF REVIEW

A district court has jurisdiction to review any part of a Magistrate Judge's report and recommendation to which a party has timely filed objection.  *See* Fed. R. Civ. P. 72(b)(3).  The standard of review is de novo.  *Id*.  Accordingly, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  The court reviews those portions of the report

---

[2] Magistrate Judge Donohue's Report and Recommendation includes a more detailed description of the facts and administrative history.  (*See generally* R&R.)  This court sees no need to expand on Judge Donohue's descriptions here.

ORDER- 3

and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Here, the government filed timely objection to Magistrate Judge Donohue's analysis and conclusions as a whole. (*See* Resp. Obj. at 1.). Consequently, this court reviews the Report and Recommendation in its entirety.

## IV.   ANALYSIS

This case turns on the application of 8 U.S.C. § 1226 to Mr. Morelos. The parties dispute whether Judge Donohue erred in concluding that the government must provide Mr. Morelos a bond hearing under 8 U.S.C. § 1226(a). ICE argues that a bond hearing is inappropriate here because ICE holds Mr. Morelos under the mandatory detention provision of 8 U.S.C. § 1226(c). Mr. Morelos counters that 8 U.S.C. § 1226(c) does not apply to Mr. Morelos because it is limited to those aliens detained at the time they are released from custody for a qualifying offense. Although the Ninth Circuit has not yet determined whether the temporal language in Section 1226(c) is unambiguous and binding on the government, several district and circuit courts have considered the issue, with varying results. Despite a recent Third Circuit case to the contrary, this court adopts the "plain language" approach of the majority of district courts in the Ninth Circuit and holds that ICE does not have the authority to detain Mr. Morelos under § 1226(c). Accordingly, ICE shall grant Mr. Morelos a bond hearing under § 1226(a).

**A. This Court has Jurisdiction and Venue is Proper.**

Mr. Morelos properly asks this court to grant him a writ of habeas corpus under 28 U.S.C. § 2241. A federal court may grant a habeas corpus petition when a prisoner "is in

custody in violation of the Constitution or laws or treaties of the United States. . . ." *Id.* Mr. Morelos argues that the government has wrongfully detained him under 8 U.S.C. § 1226(c). *See Zadvydas v. Davis,* 533 U.S. 678, 687-89 (2001).

This court has jurisdiction under 28 U.S.C. § 2241, which provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . ." The Western District of Washington is the proper venue for Mr. Morelos to bring his petition because Mr. Morelos is in custody at the Northwest Detention center, which is within the geographical boundaries of the Western District. *See* 28 U.S.C. § 2241(d) (providing that "the application may be filed in the district court for the district wherein such person is in custody . . . .").

**B. The Parties Dispute the Meaning of 8 U.S.C. § 1226(c).**

Section 1226 generally gives the government the discretion to detain aliens pending completion of removal proceedings but requires mandatory detention for certain narrow categories of aliens. 8 U.S.C. § 1226. Under Section 1226(a), the Attorney General may arrest and detain aliens pending removal, but it must provide detained aliens with an individualized bond hearing in front of an Immigration Judge. *Id.* The Attorney General will release the alien on bond, release the alien on conditional parole, or detain the alien depending on the outcome of that hearing. *Id.* Section 1226(c) removes Immigration Judge's role for certain categories of aliens, making detention of those aliens mandatory. 8 U.S.C. § 1226(c). Aliens detained pursuant to 8 U.S.C. § 1226(c) are not eligible for a bond. That section provides, in relevant part:

//

>     (c) Detention of criminal aliens
>     (1) Custody
>     The Attorney General shall take into custody any alien who—
>         (A) Is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>         (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C) or (D) of this title,
>         (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[sic] to a term of imprisonment of at least 1 year, or
>         (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>     when the alien is released, without regard to whether the alien is released on parole, supervised released, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c).

The parties dispute whether the phrase "when . . . released" makes § 1226(c) inapplicable when the government detains the alien after he or she is released from custody for a deportable offense. Mr. Morelos argues—and Magistrate Judge Donohue agrees—that, by virtue of the "when … released" language in the statute, 8 U.S.C. § 1226(c) is only applicable if ICE detains an alien at the time he or she is released from custody for the deportable offence. According to Mr. Morelos and Magistrate Judge Donohue, because ICE detained Mr. Morelos several years later, 8 U.S.C. § 1226(c) does not apply. Therefore, he should have been detained under 8 U.S.C. § 1226(a) and given a bond hearing.[3]

---

[3] Mr. Morelos also argues that the length of his detention exceeds the "brief detention" permitted by 8 U.S.C. § 1226. *See Denmore v. Kim*, 538 U.S. 510, 527-28, 530 (2003) (upholding the statute as constitutional, but clarifying that the mandatory detention period is "brief," generally not exceeding several months); *Casas-Castrillon v. Dep't of Homeland Sec.*,

ORDER- 6

1  ICE counters that the "when . . . released" language in 8 U.S.C. § 1226(c) does not
2  describe the aliens that are subject to mandatory detention. Rather, "when . . . released"
3  is a hortatory deadline that is not binding on the agency. (Obj. at 2.) Thus, even if the
4  government detains an alien long after he or she is released from custody, the government
5  is still required to detain him or her under 8 U.S.C. § 1226(c). (*Id*.) In the alternative,
6  ICE posits that "when . . . released" is an ambiguous phrase, and courts should give
7  deference to the agency's construction of the phrase under the *Chevron* deference
8  doctrine, unless the interpretation is arbitrary and capricious. *See Chevron U.S.A., Inc. v.*
9  *Natural Res. Def. Counsel, Inc*. 467 U.S. 837, 842-43 (1984). The Bureau of
10 Immigration Affairs' ("BIA") has held the "when . . . released" language denotes the
11 earliest time, not the only time, the government should detain an alien under 8 U.S.C. §
12 1226(c), *see In the Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001), an interpretation
13 ICE argues passes the *Chevron* test. For these two reasons, ICE argues that it properly
14 detained Mr. Morelos under 8 U.S.C. § 1226(c), although it did so several years after he
15 was released from custody for a qualifying crime. (*See generally* Resp. Obj.)
16 //
17 //
18 //
19 

20 5635 F.3d 942, 948 (2008) (noting that once the alien's "proceedings before the BIA were complete, the Attorney General's authority to detain him under 1226(c) ended and that authority
21 shifted instead to 1226(a)."). This argument must fail because Mr. Morelos's removal proceedings are ongoing. For example, his "withholding only" hearing—during which an immigration judge determines whether the alien is entitled to a withholding of removal under 8
22 C.F.R. § 1208.2(c)(2)—was scheduled for May 1, 2013. (*See* R&R at 1.)

ORDER- 7

### C. There is no Binding Precedent.

The Ninth Circuit has not yet ruled on the meaning of the "when . . . released" language in 8 U.S.C. § 1226(c), although two circuit courts and many district courts have interpreted the phrase.

The majority of district courts in this and other circuits hold that the "when . . . released" language is unambiguous, and requires the government to detain an alien at the time the alien is released from custody for a qualifying crime in order to detain him or her under § 1226(c). *See, e.g., Espinoza v. Atken,* No. 5:13-cv-00512 EJR, 2013 WL 1087492 (N.D. Cal. Mar. 13, 2013) (holding that 'when … released' unambiguously means at the time of the alien's release from custody, and granting Petitioner's habeas corpus petition); *Snegirev v. Asher*, 2013 WL 942607, --- F. Supp. 2d ---- (W.D. Wash. Mar. 11, 2013) (same); *Ortiz v. Holder*, No. 2:11CV1146 DAK, 2012 WL 893154 (D. Utah Mar. 14, 2012) (same); *Bogarin-Flores v. Napolitano*, Civil No. 12cvo399 JAH(WMc), 2012 WL 3283287 (S.D. Cal. Aug. 10, 2012) (same); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221 (W.D. Wash. 2004) (same). The First Circuit agreed with this approach in dicta, noting that Section 1226(c) is a system of limited mandatory detention that only applies when the alien is released from custody for the offending crime. *See Saysana v. Gillen*, 590 F.3d 7, 17 n.6 (1st Cir. 2007). Finally, Magistrate Judge Donohue applied this "plain language" analysis in his Report and Recommendations. (*See* R&R at 3.)

In contrast, the Fourth Circuit and several district courts have held that the "when . . . released" language is ambiguous, and have deferred to the BIA construction of

the statute pursuant to the *Chevron* deference doctrine. *See, e.g., Hosh v. Lucero*, 680 F.3d 375, 378-80 (4th Cir. 2012) (applying *Chevron,* 467 U.S. at 842-43, and deferring to BIA's construction of 8 U.S.C. § 1226(c)); *Khetani v. Petty*, 859 F. Supp. 2d 1036 (W.D. Mo. 2012) (same); *Santana v. Muller*, No. 12-cv-430, 2012 WL 951768, at *4 (S.D.N.Y Mar. 12, 2012) (same). Accordingly, these courts hold that 8 U.S.C. § 1226(c) applies even when the government detains the alien several months or years after the alien was released from custody for a deportable offense. *See In the Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001).

Finally, the Third Circuit has held that immigration officials do not lose their authority to detain an alien under § 1226(c) if they fail to act at the time the alien is released because the "when . . . released" language is not a mandatory deadline.[4] *See Sylvain v. Attny. Gen. of the United States*, 2013 WL 1715304, --- F.3d ----, at *20 (3d Cir. Apr. 22, 2013). In *Sylvain* the Third Circuit held that, "the government's authority to impose mandatory detention does not depend on its compliance with the 'when . . . released' deadline." *Id*. Indeed, in order for a time limit like "when . . . released" to be jurisdictional, Congress must explicitly tie the government's authority to the requirement. *Id*. at *24. Failing that, courts should read temporal requirements as hortatory, the purpose of which is to "'prod [agencies] . . . into ensuring the timely completion of their statutory obligations . . . ,'" not to divest of them of their power to act. *See id*. at *21. The Third Circuit relies on Supreme Court precedent that

---

[4] The Fourth Circuit cites this approach as an alternate basis for its decision in *Lucero*. *See Lucero,* 680 F.3d at 381-83.

ORDER- 9

holds that the presence of mandatory language in a statute should not be read as jurisdictional when doing so would divest the agency of the power to act, thus amounting to a sanction of the agency and stripping the public of certain statutory benefits. *United States v. Montalvo-Murillo*, 495 U.S. 711, 717-18 (1990); *see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 161 (2003); *Brock v. Pierce Cnty.*, 476 U.S. 253, 266 (1986).

### D. The Plain Language of the Statute Required ICE to Detain Mr. Morelos Immediately.

This court declines ICE's invitation to adopt the reasoning from either the Third or Fourth Circuits. Instead, the court finds that the plain language of 8 U.S.C. § 1226(c) unambiguously requires the government to detain an alien at the time the alien is released from custody, or within a reasonable period of time thereafter. In doing so, it agrees with the majority of district courts in the Ninth Circuit which have held that 8 U.S.C. § 1226(c) is a narrow provision, constrained in its application by the phrase "when . . . released."

The cases cited by the Third Circuit in *Sylvain* are not applicable here because requiring the government to provide Mr. Morelos a bond hearing is neither a sanction, nor does it "rob the public of statutory benefits." *Snegirev*, 2013 WL 942607, --- F. Supp. 2d ----, at *3. Indeed, even if the government cannot detain Mr. Morelos under Section 1226(c)'s mandatory provision, it can argue that Mr. Morelos should be denied bond because he is a flight risk or a danger to the community. *See Matter of Urena*, 25 I. & N. Dec. 140, 141 (BIA 2009) ("An Immigration Judge should only set a bond if he first determines that the alien does not present a danger to the community."); *In re Guerra*, 24

ORDER- 10

I. & N. Dec. 37, 40 (BIA 2006) (noting that "the burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond."). In this way, enforcing the temporal requirement of Section 1226(c) would not amount to a sanction because it would not divest the agency of the power to seek to detain Mr. Morelos. *See* 8 U.S.C. § 1226(a). Nor would enforcing the "when . . . released" requirement rob the public of statutory benefit, because if Mr. Morelos is truly a flight risk or a hazard, the government will deny him bond under § 1226(a)(1).

The main case the Third Circuit relies on to support its holding in *Sylvain* is *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990), but that case is distinguishable from the instant case. In *Montalvo-Murillo,* the Supreme Court interpreted a provision of the Bail Reform Act ("BRA") that requires a judicial officer to hold a detention hearing for a suspect held in custody "immediately upon the person's first appearance . . . ." 18 U.S.C. § 3142(f) (1984 ed.). The *Montalvo-Murillo* Court construed that temporal requirement broadly, holding that the government was not divested of its authority to detain the suspect although it did not hold a detention hearing "immediately" upon his first appearance. *Montalvo-Murillo*, 495 U.S. at 718. The Court reasoned that the violation of the BRA's immediacy requirement did not justify releasing the suspect. *Id*. Unlike in *Montalvo-Murillo*, this court can enforce Section 1226(c)'s "when . . . released" requirement without requiring ICE to release Mr. Morelos. Indeed, the government may still detain Mr. Morelos by refusing his bond request at a bond hearing. *See* 8 U.S.C. § 1226(c). Thus, in contrast to *Montalvo-Murillo*, "granting the instant habeas petition is not a 'sanction,' because Respondent retains the authority to act,

ORDER- 11

1 albeit under a different statutory provision." *Snegirev*, 2013 WL 942607, --- F. Supp. 2d
2 ----, at *4.

3     Having determined that the case the Third Circuit relied on in *Sylvain* does not
4 support ICE's argument, this court turns to the language of the statute. The primary duty
5 of a court in interpreting a statute is to give effect to legislative intent and purpose. *See*
6 *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 604 (9th Cir. 2007). To do so, the court starts
7 with the plain language of the statute, *id.*, keeping in mind that no statute should be
8 construed to as to render a word or phrase superfluous, *TRW Inc. v. Andrews*, 534 U.S. 19
9 (2001). The court's analysis ends with the plain language of the statute unless applying
10 the plain language leads to unreasonable or impracticable results. *Robinson v. United*
11 *States*, 586 F.3d 683, 687 (9th Cir. 2009). Finally, the court should look to legislative
12 history for evidence of congressional intent only if the plain language of the statute is
13 ambiguous. *See id.; United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).

14     The majority of district courts in the Ninth Circuit are correct in holding that the
15 phrase "when . . . released," as used in 8 U.S.C. § 1226(c), is not ambiguous. In statutory
16 construction, all words and phrases shall be given their plain and ordinary meaning. *See*
17 *Resisting Envtl. Destruction on Indigenous Lands, REDOIL v. E.P.A.*, 704 F.3d 743, 751
18 (9th Cir. 2012). The word "when" means "as soon as" or "at whatever time that."
19 *Webster's New World Dictionary* 1520 (3rd College ed. 1988). "When" is not subject to
20 multiple constructions. Indeed, the First Circuit has noted that, "the government's

21
22

attempt to make § 1226(c)(1) ambiguous is strained." *Saysana*, 590 F.3d at 16.[5] It follows, then, that "the term 'when the alien is released' implies a certain immediacy, referring to action or activity occurring at the time that or as soon as other action has ceased or begun." *Rianto v. Holder*, No. CV-11-0137-PHX-FJM, 2011 WL 3489613, at *3 (D. Ariz. Aug. 9, 2011). The Ninth Circuit has confirmed this reading. The court discussed 8 U.S.C. § 1226(c) in dicta, noting that, "Congress has mandated that such aliens [those enumerated in Section 1226(c)] must be taken into custody at the time they are charged." *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (2008). Accordingly, 8 U.S.C. § 1226(c) permits the government to detain a qualifying alien without bond only if ICE takes custody of the alien at the time he or she is released for a deportable offense, or within a reasonable time.

Adopting a different interpretation of § 1226(c) would render the phrase "when . . . released" superfluous, violating another critical canon of statutory construction. "A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant." *Andrews*, 534 U.S. at 31; *see also United Transp. Union v. BSNF Ry. Co.*, 710 F.3d 915,

---

[5] In *Saysana*, the First Circuit addressed a similar, but distinct issue, to the issue presented here. There, ICE detained petitioner after he was released from custody for a non-qualifying crime. The government argued that the "when . . . released" language in 8 U.S.C. § 1226(c) permitted the detention because ICE detained petitioner at the time he was released from custody, albeit for a non-deportable offense. *See Saysana v. Gillen*, 590 F.3d 7, 8 (1st Cir. 2009). The First Circuit concluded that the government's interpretation of the statute was erroneous and held that "the statute contemplates mandatory detention following release from non-DHS custody for an offense specified in the statute, not merely *any* release from *any* non-DHS custody." *Id.* at 18. In doing so, the panel interpreted 8 U.S.C. § 1226(c) and found the language clear.

928 (9th Cir. 2013).  Here, permitting ICE to detain an alien under 8 U.S.C. § 1226(c) anytime after the alien is released from custody would render the phrase "when the alien is released" meaningless.  There is no evidence that Congress intended the courts to disregard the phrase "when the alien is released" and courts should not do so.  *See BSNF Ry. Co.*, 710 F.3d at 928.

The court includes the clause—"within a reasonable time"—in its holding in order to avoid an interpretation of Section 1226(c) that could lead to unreasonable or impracticable results.  *See Robinson*, 586 F.3d at 687.   Such a reasonableness "qualification must be included in order to alleviate valid concerns raised by others who have had occasion to analyze § 1226(c)."  *Espinoza v. Aitken*, 2013 WL 1087492, --- F. Supp. 2d ----, at *7 n.7 (N.D. Cal. Mar. 13, 2013).  *See Rojas*, 23 I. & N. Dec. at 128 ("[i]t is difficult to conclude that Congress meant to premise the success of its mandatory detention scheme on the capacity of the Service to appear at the jailhouse door to take custody of an alien at the precise moment of release.").  At least two district courts include a similar reasonableness qualification in their analyses of Section 1226(c).  *See Espinoza*, 2013 WL 1087492, --- F. Supp. 2d ----, at *7, n.7 (noting that the reasonableness qualification is necessary to avoid absurd results); *Zabadi v. Chertoff*, 2005 WL 3157377, No. C 05-03335 WHA, at *5 (N.D. Cal. Nov. 22, 2005) (holding that "the Department of Homeland Security need not act immediately but has a reasonable period of time after release from incarceration in which to detain.").  The court adopts this reasoning and holds that Section 1226(c) applies when ICE detains a criminal alien at

the time he or she is released from criminal custody, or within a reasonable period of time thereafter.

Finally, crediting the temporal aspect of 8 U.S.C. § 1226(c) does not contravene the purpose of the statute. Congress passed 8 U.S.C. § 1226(c) in part to address a concern over the high crime rate among deportable aliens released on bond pending removal. *Denmore v. Kim*, 538 U.S. 510, 518-20 (2003). Section 1226 addresses this problem in two ways. First, it requires the government to detain—without the possibility of a bond—certain deportable aliens at the time those aliens are released from custody. *See* 8 U.S.C. § 1226(c). Second, the statute permits ICE—on warrant by the Attorney General—to detain all other qualifying aliens. 8 U.S.C. § 1226(a). If an Immigration Judge determines that an alien in the latter category presents a high risk of flight or recidivism, the government "may continue to detain the arrested alien" under 8 U.S.C. § 1226(a)(1). Otherwise, the alien will be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2). This statutory scheme corresponds with Congress's intent to detain certain high-risk deportable aliens, *see Denmore,* 538 U.S. at 518, while also affording aliens appropriate due process rights, s*ee Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he due process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful temporary or permanent.").

Because the statutory text is clear the court need not conduct a *Chevron* analysis. Under *Chevron*, the court should give deference to the agency interpretation of a statute only if the plain text of the statute is not clear. *See Chevron*, 467 U.S. at 842-43. If the plain text is clear, "the court, as well as the agency, must give effect to the

ORDER- 15

unambiguously expressed intent of Congress." *Id*. Here, the plain language of the statue is clear: Section 1226(c) only applies when the government detains an alien immediately upon, or within a reasonable period of time thereafter, his or her release from custody.

ICE has not demonstrated that it detained Mr. Morelos upon, or reasonably soon after, the state released him from custody for a 2010 drug trafficking crime. Indeed, it appears from the parties briefing that ICE detained Mr. Morelos a substantial period of time after he was released from incarceration for the crimes that qualify him for removal under 8 U.S.C. § 1227. (*See* Resp. Mot. at 4-5.) For that reason, ICE does not have the authority to detain Mr. Morelos under § 1226(c). Accordingly, this court ADOPTS the Report and Recommendation, and ORDERS ICE to GRANT Mr. Morelos a bond hearing.

## V. CONCLUSION

For the foregoing reasons, the court hereby ORDERS as follows:

(1) The court ADOPTS the Report and Recommendation (Dkt. # 23) granting Mr. Morelos a bond hearing;[6]

(2) Petitioner's petition on writ of habeas corpus (Dkt. # 10) is GRANTED, and Respondent's motion to dismiss (Dkt. # 20) is DENIED; and

//

//

---

[6] It should be noted that this court's reasoning differs from that of Magistrate Judge Donohue. (*See* generally R&R.) Thus, while the court adopts the Magistrate Judge Donohue's conclusions, it does so based on the reasoning set forth in this order.

1     (3) ICE shall provide Mr. Morelos with an individualized bond hearing before an Immigration Judge pursuant to the general release terms of 8 U.S.C. § 1226(a), within (30) thirty days of the entry of this Order.

    Dated this 8th day of May, 2013.

                                                                                   */s/ James L. Robart*

                                                                                    JAMES L. ROBART  
                                                                                    United States District Judge