UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHNNY DELUIS-MORELOS, | CASE NO. 12CV-1905JLR |
| Petitioner, | ORDER |
| v. | |
| ICE FIELD OFFICE DIRECTOR, | |
| Respondent. | |

## I.   INTRODUCTION

Before this court is Respondent Immigration and Customs Enforcement ("ICE")

Field Office Director's objection, (Obj. (Dkt. # 25)), to Magistrate Judge James P.

Donohue's Report and Recommendation (R&R (Dkt. # 23)) pertaining to a habeas corpus

petition filed by Petitioner Johnny Deluis-Morelos.  (Pet. (Dkt. # 10.))  Having carefully

reviewed all of the foregoing, along with all other relevant documents, and governing

law, the court ADOPTS the Report and Recommendation (Dkt. # 23), GRANTS Mr.

ORDER- 1

1  Morelos's petition for writ of habeas corpus, and orders ICE to provide Mr. Morelos a

2  bond hearing.

3                    **II.      BACKGROUND**

4       Mr. Morelos is a native and citizen of Columbia, South America who entered the

5  United States in 1998 without inspection.

6       Since Mr. Morelos arrived in the United States he has developed a lengthy

7  criminal record.  This record includes several crimes appearing to qualify him for

8  expedited removal under 8 U.S.C. §§ 1227, 1228, including drug crimes and an

9  aggravated assault.  (*See* Mot. to Dismiss (Dkt. # 20) at 2.)  ICE has identified two drug

10  convictions—conspiracy to deliver cocaine in 2009 and delivering cocaine in 2010—as

11  the basis of these ongoing removal proceedings.  (*See* Mot. to Dismiss at 4-5.)

12       Mr. Morelos came to ICE's attention on May 15, 2012, when Yakima County Jail

13  contacted ICE officers to notify them that Mr. Morelos had been detained for a probation

14  violation.[1]  After interviewing Mr. Morelos at the jail, ICE determined that he met the

15  requirements for administrative removal.  This determination was predicated on the

16  above mentioned convictions.  *See* 8 U.S.C. §§ 101(a)(43)(B), 1227, 1228.  ICE served

17  Mr. Morelos with a final administrative removal order on June 27, 2012.  ICE also placed

18  an immigration detainer with the Yakima County Jail, requiring that Mr. Morelos be

19  transferred to ICE custody after his release from jail.  On June 28, 2012, Mr. Morelos was

20  transferred to ICE custody and detained at the Northwest Detention Center.  According to

21

22       [1] A probation violation does not qualify an alien for removal under 8 U.S.C. § 1227.

ORDER- 2

1  its pleadings, ICE detained Mr. Morelos under 8 U.S.C. § 1226(c).  Mr. Morelos is

2  awaiting additional administrative proceedings that are scheduled to take place in May.[2]

3      Mr. Morelos filed the instant petition for writ of habeas corpus on November 9,

4  2012.  He seeks release from custody or, in the alternative, an individualized bond

5  hearing before an Immigration Judge.  (*See* Pet. at 2.)  ICE filed a motion to dismiss Mr.

6  Morelos's petition.  ICE's motion to dismiss and Mr. Morelos's petition for habeas

7  corpus were before Magistrate Judge James P. Donohue, and on February 25, 2013,

8  Magistrate Judge Donohue issued his Report and Recommendation.  (*See generally*

9  R&R.)  In it, he recommends that this court grant Mr. Morelos's habeas corpus petition,

10  deny ICE's motion to dismiss, and require that ICE provide Mr. Morelos with an

11  individualized bond hearing before an Immigration Judge.  (*Id*.)

12      ICE filed a timely objection to Magistrate Judge Donohue's Report and

13  Recommendation.  (*See* Obj.)  Those objections are before the court.  (*See generally* id.)

14  **III.    STANDARD OF REVIEW**

15      A district court has jurisdiction to review any part of a Magistrate Judge's report

16  and recommendation to which a party has timely filed objection.  *See* Fed. R. Civ. P.

17  72(b)(3).  The standard of review is de novo.  *Id*.  Accordingly, "the court may accept,

18  reject, or modify, in whole or in part, the findings or recommendations made by the

19  magistrate judge."  28 U.S.C. § 636(b)(1).  The court reviews those portions of the report

20

21      [2] Magistrate Judge Donohue's Report and Recommendation includes a more detailed
22  description of the facts and administrative history.  (*See generally* R&R.)  This court sees no
   need to expand on Judge Donohue's descriptions here.

ORDER- 3

1  and recommendation to which specific written objection is made.  *United States v.*

2  *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  Here, the government filed

3  timely objection to Magistrate Judge Donohue's analysis and conclusions as a whole.

4  (*See* Resp. Obj. at 1.).  Consequently, this court reviews the Report and Recommendation

5  in its entirety.

6                                      **IV.    ANALYSIS**

7          This case turns on the application of 8 U.S.C. § 1226 to Mr. Morelos.  The parties

8  dispute whether Judge Donohue erred in concluding that the government must provide

9  Mr. Morelos a bond hearing under 8 U.S.C. § 1226(a).  ICE argues that a bond hearing is

10  inappropriate here because ICE holds Mr. Morelos under the mandatory detention

11  provision of 8 U.S.C. § 1226(c).  Mr. Morelos counters that 8 U.S.C. § 1226(c) does not

12  apply to Mr. Morelos because it is limited to those aliens detained at the time they are

13  released from custody for a qualifying offense.  Although the Ninth Circuit has not yet

14  determined whether the temporal language in Section 1226(c) is unambiguous and

15  binding on the government, several district and circuit courts have considered the issue,

16  with varying results.  Despite a recent Third Circuit case to the contrary, this court adopts

17  the "plain language" approach of the majority of district courts in the Ninth Circuit and

18  holds that ICE does not have the authority to detain Mr. Morelos under § 1226(c).

19  Accordingly, ICE shall grant Mr. Morelos a bond hearing under § 1226(a).

20      **A. This Court has Jurisdiction and Venue is Proper.**

21          Mr. Morelos properly asks this court to grant him a writ of habeas corpus under 28

22  U.S.C. § 2241.  A federal court may grant a habeas corpus petition when a prisoner "is in

1   custody in violation of the Constitution or laws or treaties of the United States. . . ." *Id.*

2   Mr. Morelos argues that the government has wrongfully detained him under 8 U.S.C. §

3   1226(c). *See Zadvydas v. Davis,* 533 U.S. 678, 687-89 (2001).

4          This court has jurisdiction under 28 U.S.C. § 2241, which provides that "[w]rits of

5   habeas corpus may be granted by . . . the district courts . . . ."  The Western District of

6   Washington is the proper venue for Mr. Morelos to bring his petition because Mr.

7   Morelos is in custody at the Northwest Detention center, which is within the geographical

8   boundaries of the Western District.  *See* 28 U.S.C. § 2241(d) (providing that "the

9   application may be filed in the district court for the district wherein such person is in

10  custody . . . .").

11      **B.  The Parties Dispute the Meaning of 8 U.S.C. § 1226(c).**

12          Section 1226 generally gives the government the discretion to detain aliens

13  pending completion of removal proceedings but requires mandatory detention for certain

14  narrow categories of aliens.  8 U.S.C. § 1226.  Under Section 1226(a), the Attorney

15  General may arrest and detain aliens pending removal, but it must provide detained aliens

16  with an individualized bond hearing in front of an Immigration Judge.  *Id.*  The Attorney

17  General will release the alien on bond, release the alien on conditional parole, or detain

18  the alien depending on the outcome of that hearing.  *Id.*  Section 1226(c) removes

19  Immigration Judge's role for certain categories of aliens, making detention of those aliens

20  mandatory.  8 U.S.C. § 1226(c).  Aliens detained pursuant to 8 U.S.C. § 1226(c) are not

21  eligible for a bond.  That section provides, in relevant part:

22  //

1

              (c) Detention of criminal aliens
              (1) Custody

2

              The Attorney General shall take into custody any alien who—
                      (A) Is inadmissible by reason of having committed any

3

                offense covered in section 1182(a)(2) of this title,
                      (B) is deportable by reason of having committed any offense

4

                covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C) or (D) of this
                title,

5

                      (C) is deportable under section 1227(a)(2)(A)(i) of this title
                on the basis of an offense for which the alien has been sentence[sic]

6

                to a term of imprisonment of at least 1 year, or
                      (D) is inadmissible under section 1182(a)(3)(B) of this title or

7

                deportable under section 1227(a)(4)(B) of this title,
            when the alien is released, without regard to whether the alien is released

8

            on parole, supervised released, or probation, and without regard to whether
            the alien may be arrested or imprisoned again for the same offense.

9

8 U.S.C. § 1226(c).

10

        The parties dispute whether the phrase "when . . . released" makes § 1226(c)

11

inapplicable when the government detains the alien after he or she is released from

12

custody for a deportable offense.  Mr. Morelos argues—and Magistrate Judge Donohue

13

agrees—that, by virtue of the "when … released" language in the statute, 8 U.S.C.

14

§ 1226(c) is only applicable if ICE detains an alien at the time he or she is released from

15

custody for the deportable offence.  According to Mr. Morelos and Magistrate Judge

16

Donohue, because ICE detained Mr. Morelos several years later, 8 U.S.C. § 1226(c) does

17

not apply.  Therefore, he should have been detained under 8 U.S.C. § 1226(a) and given a

18

bond hearing.[3]

19

20

_____

21

     [3] Mr. Morelos also argues that the length of his detention exceeds the "brief detention"
permitted by 8 U.S.C. § 1226.  *See Denmore v. Kim*, 538 U.S. 510, 527-28, 530 (2003)

22

(upholding the statute as constitutional, but clarifying that the mandatory detention period is
"brief," generally not exceeding several months); *Casas-Castrillon v. Dep't of Homeland Sec.*,

ORDER- 6

1    ICE counters that the "when . . . released" language in 8 U.S.C. § 1226(c) does not

2    describe the aliens that are subject to mandatory detention.  Rather, "when . . . released"

3    is a hortatory deadline that is not binding on the agency.  (Obj. at 2.)  Thus, even if the

4    government detains an alien long after he or she is released from custody, the government

5    is still required to detain him or her under 8 U.S.C. § 1226(c).  (*Id*.)  In the alternative,

6    ICE posits that "when . . . released" is an ambiguous phrase, and courts should give

7    deference to the agency's construction of the phrase under the *Chevron* deference

8    doctrine, unless the interpretation is arbitrary and capricious.  *See Chevron U.S.A., Inc. v.*

9    *Natural Res. Def. Counsel, Inc*. 467 U.S. 837, 842-43 (1984).  The Bureau of

10   Immigration Affairs' ("BIA") has held the "when . . . released" language denotes the

11   earliest time, not the only time, the government should detain an alien under 8 U.S.C. §

12   1226(c), *see In the Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001), an interpretation

13   ICE argues passes the *Chevron* test.  For these two reasons, ICE argues that it properly

14   detained Mr. Morelos under 8 U.S.C. § 1226(c), although it did so several years after he

15   was released from custody for a qualifying crime.  (*See generally* Resp. Obj.)

16   //

17   //

18   //

19   _____

20   5635 F.3d 942, 948 (2008) (noting that once the alien's "proceedings before the BIA were
     complete, the Attorney General's authority to detain him under 1226(c) ended and that authority
21   shifted instead to 1226(a).").  This argument must fail because Mr. Morelos's removal
     proceedings are ongoing.  For example, his "withholding only" hearing—during which an
22   immigration judge determines whether the alien is entitled to a withholding of removal under 8
     C.F.R. § 1208.2(c)(2)—was scheduled for May 1, 2013.  (*See* R&R at 1.)

ORDER- 7

1   **C. There is no Binding Precedent.**

2       The Ninth Circuit has not yet ruled on the meaning of the "when . . . released"

3   language in 8 U.S.C. § 1226(c), although two circuit courts and many district courts have

4   interpreted the phrase.

5       The majority of district courts in this and other circuits hold that the

6   "when . . . released" language is unambiguous, and requires the government to detain an

7   alien at the time the alien is released from custody for a qualifying crime in order to

8   detain him or her under § 1226(c).  *See, e.g., Espinoza v. Atken,* No. 5:13-cv-00512 EJR,

9   2013 WL 1087492 (N.D. Cal. Mar. 13, 2013) (holding that 'when … released'

10  unambiguously means at the time of the alien's release from custody, and granting

11  Petitioner's habeas corpus petition); *Snegirev v. Asher*, 2013 WL 942607, --- F. Supp. 2d

12  ---- (W.D. Wash. Mar. 11, 2013) (same); *Ortiz v. Holder*, No. 2:11CV1146 DAK, 2012

13  WL 893154 (D. Utah Mar. 14, 2012) (same); *Bogarin-Flores v. Napolitano*, Civil No.

14  12cvo399 JAH(WMc), 2012 WL 3283287 (S.D. Cal. Aug. 10, 2012) (same); *Quezada-*

15  *Bucio v. Ridge*, 317 F. Supp. 2d 1221 (W.D. Wash. 2004) (same).  The First Circuit

16  agreed with this approach in dicta, noting that Section 1226(c) is a system of limited

17  mandatory detention that only applies when the alien is released from custody for the

18  offending crime.  *See Saysana v. Gillen*, 590 F.3d 7, 17 n.6 (1st Cir. 2007).  Finally,

19  Magistrate Judge Donohue applied this "plain language" analysis in his Report and

20  Recommendations. (*See* R&R at 3.)

21      In contrast, the Fourth Circuit and several district courts have held that the

22  "when . . . released" language is ambiguous, and have deferred to the BIA construction of

1  the statute pursuant to the *Chevron* deference doctrine.  *See, e.g., Hosh v. Lucero*, 680

2  F.3d 375, 378-80 (4th Cir. 2012) (applying *Chevron,* 467 U.S. at 842-43, and deferring to

3  BIA's construction of 8 U.S.C. § 1226(c)); *Khetani v. Petty*, 859 F. Supp. 2d 1036 (W.D.

4  Mo. 2012) (same); *Santana v. Muller*, No. 12-cv-430, 2012 WL 951768, at *4 (S.D.N.Y

5  Mar. 12, 2012) (same).  Accordingly, these courts hold that 8 U.S.C. § 1226(c) applies

6  even when the government detains the alien several months or years after the alien was

7  released from custody for a deportable offense.  *See In the Matter of Rojas*, 23 I. & N.

8  Dec. 117 (BIA 2001).

9          Finally, the Third Circuit has held that immigration officials do not lose their

10  authority to detain an alien under § 1226(c) if they fail to act at the time the alien is

11  released because the "when . . . released" language is not a mandatory deadline.[4]  *See*

12  *Sylvain v. Attny. Gen. of the United States*, 2013 WL 1715304, --- F.3d ----, at *20 (3d

13  Cir. Apr. 22, 2013).  In *Sylvain* the Third Circuit held that, "the government's authority to

14  impose mandatory detention does not depend on its compliance with the

15  'when . . . released' deadline." *Id*.  Indeed, in order for a time limit like

16  "when . . . released" to be jurisdictional, Congress must explicitly tie the government's

17  authority to the requirement.  *Id*. at *24.  Failing that, courts should read temporal

18  requirements as hortatory, the purpose of which is to "'prod [agencies] . . . into ensuring

19  the timely completion of their statutory obligations . . . ,'" not to divest of them of their

20  power to act.  *See id*. at *21.  The Third Circuit relies on Supreme Court precedent that

21

22          [4] The Fourth Circuit cites this approach as an alternate basis for its decision in *Lucero*.
    *See Lucero,* 680 F.3d at 381-83.

1  holds that the presence of mandatory language in a statute should not be read as

2  jurisdictional when doing so would divest the agency of the power to act, thus amounting

3  to a sanction of the agency and stripping the public of certain statutory benefits. *United*

4  *States v. Montalvo-Murillo*, 495 U.S. 711, 717-18 (1990); *see also Barnhart v. Peabody*

5  *Coal Co.*, 537 U.S. 149, 161 (2003); *Brock v. Pierce Cnty.*, 476 U.S. 253, 266 (1986).

6      **D. The Plain Language of the Statute Required ICE to Detain Mr. Morelos**
        **Immediately.**

7      This court declines ICE's invitation to adopt the reasoning from either the Third or

8  Fourth Circuits.  Instead, the court finds that the plain language of 8 U.S.C. § 1226(c)

9  unambiguously requires the government to detain an alien at the time the alien is released

10  from custody, or within a reasonable period of time thereafter.  In doing so, it agrees with

11  the majority of district courts in the Ninth Circuit which have held that 8 U.S.C. §

12  1226(c) is a narrow provision, constrained in its application by the phrase

13  "when . . . released."

14      The cases cited by the Third Circuit in *Sylvain* are not applicable here because

15  requiring the government to provide Mr. Morelos a bond hearing is neither a sanction,

16  nor does it "rob the public of statutory benefits."  *Snegirev*, 2013 WL 942607, --- F.

17  Supp. 2d ----, at *3.  Indeed, even if the government cannot detain Mr. Morelos under

18  Section 1226(c)'s mandatory provision, it can argue that Mr. Morelos should be denied

19  bond because he is a flight risk or a danger to the community.  *See Matter of Urena*, 25 I.

20  & N. Dec. 140, 141 (BIA 2009) ("An Immigration Judge should only set a bond if he first

21  determines that the alien does not present a danger to the community."); *In re Guerra*, 24

22

1   I. & N. Dec. 37, 40 (BIA 2006) (noting that "the burden is on the alien to show to the

2   satisfaction of the Immigration Judge that he or she merits release on bond."). In this

3   way, enforcing the temporal requirement of Section 1226(c) would not amount to a

4   sanction because it would not divest the agency of the power to seek to detain Mr.

5   Morelos. *See* 8 U.S.C. § 1226(a). Nor would enforcing the "when . . . released"

6   requirement rob the public of statutory benefit, because if Mr. Morelos is truly a flight

7   risk or a hazard, the government will deny him bond under § 1226(a)(1).

8         The main case the Third Circuit relies on to support its holding in *Sylvain* is

9   *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990), but that case is distinguishable

10   from the instant case. In *Montalvo-Murillo,* the Supreme Court interpreted a provision of

11   the Bail Reform Act ("BRA") that requires a judicial officer to hold a detention hearing

12   for a suspect held in custody "immediately upon the person's first appearance . . . ." 18

13   U.S.C. § 3142(f) (1984 ed.). The *Montalvo-Murillo* Court construed that temporal

14   requirement broadly, holding that the government was not divested of its authority to

15   detain the suspect although it did not hold a detention hearing "immediately" upon his

16   first appearance. *Montalvo-Murillo*, 495 U.S. at 718. The Court reasoned that the

17   violation of the BRA's immediacy requirement did not justify releasing the suspect. *Id*.

18   Unlike in *Montalvo-Murillo*, this court can enforce Section 1226(c)'s

19   "when . . . released" requirement without requiring ICE to release Mr. Morelos. Indeed,

20   the government may still detain Mr. Morelos by refusing his bond request at a bond

21   hearing. *See* 8 U.S.C. § 1226(c). Thus, in contrast to *Montalvo-Murillo*, "granting the

22   instant habeas petition is not a 'sanction,' because Respondent retains the authority to act,

ORDER- 11

1    albeit under a different statutory provision." *Snegirev*, 2013 WL 942607, --- F. Supp. 2d

2    ----, at *4.

3         Having determined that the case the Third Circuit relied on in *Sylvain* does not

4    support ICE's argument, this court turns to the language of the statute.  The primary duty

5    of a court in interpreting a statute is to give effect to legislative intent and purpose.  *See*

6    *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 604 (9th Cir. 2007).  To do so, the court starts

7    with the plain language of the statute, *id*., keeping in mind that no statute should be

8    construed to as to render a word or phrase superfluous, *TRW Inc. v. Andrews*, 534 U.S. 19

9    (2001).  The court's analysis ends with the plain language of the statute unless applying

10   the plain language leads to unreasonable or impracticable results.  *Robinson v. United*

11   *States*, 586 F.3d 683, 687 (9th Cir. 2009).  Finally, the court should look to legislative

12   history for evidence of congressional intent only if the plain language of the statute is

13   ambiguous.  *See id.; United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).

14        The majority of district courts in the Ninth Circuit are correct in holding that the

15   phrase "when . . . released," as used in 8 U.S.C. § 1226(c), is not ambiguous.  In statutory

16   construction, all words and phrases shall be given their plain and ordinary meaning.  *See*

17   *Resisting Envtl. Destruction on Indigenous Lands, REDOIL v. E.P.A.*, 704 F.3d 743, 751

18   (9th Cir. 2012).  The word "when" means "as soon as" or "at whatever time that."

19   *Webster's New World Dictionary* 1520 (3rd College ed. 1988).  "When" is not subject to

20   multiple constructions.  Indeed, the First Circuit has noted that, "the government's

21

22

ORDER- 12

1  attempt to make § 1226(c)(1) ambiguous is strained." *Saysana*, 590 F.3d at 16.[5]  It

2  follows, then, that "the term 'when the alien is released' implies a certain immediacy,

3  referring to action or activity occurring at the time that or as soon as other action has

4  ceased or begun."  *Rianto v. Holder*, No. CV-11-0137-PHX-FJM, 2011 WL 3489613, at

5  *3 (D. Ariz. Aug. 9, 2011).  The Ninth Circuit has confirmed this reading.  The court

6  discussed 8 U.S.C. § 1226(c) in dicta, noting that, "Congress has mandated that such

7  aliens [those enumerated in Section 1226(c)] must be taken into custody at the time they

8  are charged."  *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (2008).

9  Accordingly, 8 U.S.C. § 1226(c) permits the government to detain a qualifying alien

10  without bond only if ICE takes custody of the alien at the time he or she is released for a

11  deportable offense, or within a reasonable time.

12       Adopting a different interpretation of § 1226(c) would render the phrase

13  "when . . . released" superfluous, violating another critical canon of statutory

14  construction.  "A statute ought, upon the whole, to be so construed that, if it can be

15  prevented, no clause, sentence, or word shall be superfluous, void or insignificant."

16  *Andrews*, 534 U.S. at 31; *see also United Transp. Union v. BSNF Ry. Co.*, 710 F.3d 915,

17  _____

18       [5] In *Saysana*, the First Circuit addressed a similar, but distinct issue, to the issue
presented here.  There, ICE detained petitioner after he was released from custody for a non-
19  qualifying crime.  The government argued that the "when . . . released" language in 8 U.S.C. §
1226(c) permitted the detention because ICE detained petitioner at the time he was released from
20  custody, albeit for a non-deportable offense.  *See Saysana v. Gillen*, 590 F.3d 7, 8 (1st Cir.
2009).  The First Circuit concluded that the government's interpretation of the statute was
21  erroneous and held that "the statute contemplates mandatory detention following release from
non-DHS custody for an offense specified in the statute, not merely *any* release from *any* non-
22  DHS custody."  *Id*. at 18.  In doing so, the panel interpreted 8 U.S.C. § 1226(c) and found the
language clear.

ORDER- 13

1 | 928 (9th Cir. 2013).  Here, permitting ICE to detain an alien under 8 U.S.C. § 1226(c)

2 | anytime after the alien is released from custody would render the phrase "when the alien

3 | is released" meaningless.  There is no evidence that Congress intended the courts to

4 | disregard the phrase "when the alien is released" and courts should not do so.  *See BSNF*

5 | *Ry. Co.*, 710 F.3d at 928.

6 | The court includes the clause—"within a reasonable time"—in its holding in order

7 | to avoid an interpretation of Section 1226(c) that could lead to unreasonable or

8 | impracticable results.  *See Robinson*, 586 F.3d at 687.   Such a reasonableness

9 | "qualification must be included in order to alleviate valid concerns raised by others who

10 | have had occasion to analyze § 1226(c)."  *Espinoza v. Aitken*, 2013 WL 1087492, --- F.

11 | Supp. 2d ----, at *7 n.7 (N.D. Cal. Mar. 13, 2013).  *See Rojas*, 23 I. & N. Dec. at 128

12 | ("[i]t is difficult to conclude that Congress meant to premise the success of its mandatory

13 | detention scheme on the capacity of the Service to appear at the jailhouse door to take

14 | custody of an alien at the precise moment of release.").  At least two district courts

15 | include a similar reasonableness qualification in their analyses of Section 1226(c).  *See*

16 | *Espinoza*, 2013 WL 1087492, --- F. Supp. 2d ----, at *7, n.7 (noting that the

17 | reasonableness qualification is necessary to avoid absurd results); *Zabadi v. Chertoff*,

18 | 2005 WL 3157377, No. C 05-03335 WHA, at *5 (N.D. Cal. Nov. 22, 2005) (holding that

19 | "the Department of Homeland Security need not act immediately but has a reasonable

20 | period of time after release from incarceration in which to detain.").  The court adopts

21 | this reasoning and holds that Section 1226(c) applies when ICE detains a criminal alien at

22 |

ORDER- 14

1   the time he or she is released from criminal custody, or within a reasonable period of time

2   thereafter.

3        Finally, crediting the temporal aspect of 8 U.S.C. § 1226(c) does not contravene

4   the purpose of the statute.  Congress passed 8 U.S.C. § 1226(c) in part to address a

5   concern over the high crime rate among deportable aliens released on bond pending

6   removal.  *Denmore v. Kim*, 538 U.S. 510, 518-20 (2003).  Section 1226 addresses this

7   problem in two ways.  First, it requires the government to detain—without the possibility

8   of a bond—certain deportable aliens at the time those aliens are released from custody.

9   *See* 8 U.S.C. § 1226(c).  Second, the statute permits ICE—on warrant by the Attorney

10  General—to detain all other qualifying aliens.  8 U.S.C. § 1226(a).  If an Immigration

11  Judge determines that an alien in the latter category presents a high risk of flight or

12  recidivism, the government "may continue to detain the arrested alien" under 8 U.S.C. §

13  1226(a)(1).  Otherwise, the alien will be released on bond or conditional parole.  8 U.S.C.

14  § 1226(a)(2).  This statutory scheme corresponds with Congress's intent to detain certain

15  high-risk deportable aliens, *see Denmore,* 538 U.S. at 518, while also affording aliens

16  appropriate due process rights, s*ee Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he

17  due process clause applies to all 'persons' within the United States, including aliens,

18  whether their presence here is lawful, unlawful temporary or permanent.").

19       Because the statutory text is clear the court need not conduct a *Chevron* analysis.

20  Under *Chevron*, the court should give deference to the agency interpretation of a statute

21  only if the plain text of the statute is not clear.  *See Chevron*, 467 U.S. at 842-43.  If the

22  plain text is clear, "the court, as well as the agency, must give effect to the

ORDER- 15

1   unambiguously expressed intent of Congress." *Id.* Here, the plain language of the statue

2   is clear:  Section 1226(c) only applies when the government detains an alien immediately

3   upon, or within a reasonable period of time thereafter, his or her release from custody.

4         ICE has not demonstrated that it detained Mr. Morelos upon, or reasonably soon

5   after, the state released him from custody for a 2010 drug trafficking crime.  Indeed, it

6   appears from the parties briefing that ICE detained Mr. Morelos a substantial period of

7   time after he was released from incarceration for the crimes that qualify him for removal

8   under 8 U.S.C. § 1227.  (*See* Resp. Mot. at 4-5.)  For that reason, ICE does not have the

9   authority to detain Mr. Morelos under § 1226(c).  Accordingly, this court ADOPTS the

10  Report and Recommendation, and ORDERS ICE to GRANT Mr. Morelos a bond

11  hearing.

12                              **V.    CONCLUSION**

13        For the foregoing reasons, the court hereby ORDERS as follows:

14        (1) The court ADOPTS the Report and Recommendation (Dkt. # 23) granting Mr.

15  Morelos a bond hearing;[6]

16        (2) Petitioner's petition on writ of habeas corpus (Dkt. # 10) is GRANTED, and

17  Respondent's motion to dismiss (Dkt. # 20) is DENIED; and

18  //

19  //

20

21        [6] It should be noted that this court's reasoning differs from that of Magistrate Judge
    Donohue. (*See* generally R&R.)  Thus, while the court adopts the Magistrate Judge Donohue's
22  conclusions, it does so based on the reasoning set forth in this order.

ORDER- 16

1    (3) ICE shall provide Mr. Morelos with an individualized bond hearing before an

2  Immigration Judge pursuant to the general release terms of 8 U.S.C. § 1226(a), within

3  (30) thirty days of the entry of this Order.

4    Dated this 8th day of May, 2013.

5

6

7   JAMES L. ROBART
    United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 17